IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CT-3454-FL

JULIAN TERELL FURR,                      )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )          ORDER
                                         )
JEFFEREY DAVID JERNIGAN,                 )
MICHAEL CARSON, JERRY                    )
MATTHEW LEE, and JAMES DOYT              )
HINTON, III,                             )
                                         )
                    Defendants.[1]       )

This matter is before the court on the parties' cross motions for summary judgment

pursuant to Federal Rule of Civil Procedure 56 (DE 125, 128). The issues raised are ripe for

ruling.

## STATEMENT OF THE CASE

Plaintiff, a former pretrial detainee proceeding pro se, commenced this action by filing

complaint on December 28, 2022, asserting claims for violations of his civil rights pursuant to 42

U.S.C. § 1983. Plaintiff alleges defendants used excessive force, were deliberately indifferent to

his conditions of confinement, and placed him in segregation without a hearing, in violation of the

Fourteenth and Eighth Amendments to the United States Constitution. As relief, plaintiff seeks

compensatory and punitive damages.

---

[1]     The court constructively amends the case caption to reflect dismissal of plaintiff's claims against formerly
named defendants Vivian Williams and Steve Beasly on November 30, 2023, and defendants J.B. Solomon, John Doe
1-3, and Dr. Johnson on March 25, 2025. The case caption is also constructively amended to reflect the correct names
of remaining defendants in this matter.

Following a period of discovery, and in accordance with the court's case management order, the parties filed the instant cross motions for summary judgment. By his motion, plaintiff argues the record evidence shows that defendants used excessive force and were deliberately indifferent to his conditions of confinement. Plaintiff further argues defendants did not retain video footage pursuant to jail policy. In support, plaintiff relies upon a memorandum of law, with incorporated statement of material facts, and the following exhibits: 1) plaintiff's unverified affidavit; 2) state court and investigative records; and 3) an article regarding traumatic brain injury. Defendants responded in opposition and objected to plaintiff's purported statement of material facts on the basis it failed to comply with Local Civil Rule 56.1.

By their cross motion, defendants argue the undisputed record evidence shows they did not violate plaintiff's constitutional rights, and they raise the affirmative defense of qualified immunity. In support, defendants rely upon a memorandum of law, statement of material facts, and appendix of exhibits thereto comprised of defendants' affidavits and the affidavit of Valeria Williams, a detention officer at Johnston County Jail. Plaintiff responded in opposition relying on his affidavit sworn before a notary pursuant to North Carolina law.

## STATEMENT OF FACTS

Except as otherwise noted below, the court recounts the facts in the light most favorable to plaintiff. Plaintiff was housed as a detainee in Johnston County Jail during the relevant time period. (Pl. Aff. (DE 134-1) at 1; Defs' SOMF (DE 129) ¶ 7).[2] On March 10, 2021, after inmates

---

[2]     Plaintiff's affidavit is "sworn" before a notary pursuant to North Carolina law. (See DE 1-1 at 9). As a result, the affidavit is properly considered at summary judgment. See Jones v. Solomon, 90 F.4th 198, 206 n.7 (4th Cir. 2024) (concluding that a "notarial certificate for an oath or affirmation pursuant to North Carolina Law" is sufficient to construe filing as opposing affidavit at summary judgment); N.C. Gen. Stat. § 10B-43(a); N.C. Gen. Stat. § 10B-3(2)(C), (14)(c) (describing requirements for notarial act to satisfy "vow of truthfulness on penalty of perjury").

In addition, and throughout this order, page numbers in citations to documents in the record are to the page

2

were given lunch trays, plaintiff threw his tray out of the opening to his cell into the cell block, and onto defendant Officer James Doyt Hinton, III, ("Hinton"). (Defs' SOMF (DE 129) ¶ 8). Plaintiff had been previously warned, and was again warned, not to throw his food tray and other items. (Defs' SOMF (DE 129) ¶ 9). To prevent plaintiff from throwing trays in the future, a decision was made to transfer plaintiff to Cell 2 on C-Block, which had a covered "trap" that would prevent plaintiff from throwing items out of the cell. (Id.; Pl. Aff. (DE 134-1) at 1). At approximately 3:00 p.m., detention staff directed plaintiff to move from his current location into his new cell. (Pl. Aff. (DE 134-1) at 1; Defs' SOMF (DE 129) ¶ 11). Plaintiff refused to move into the new cell because there was feces on the ground and walls. (Pl. Aff. (DE 134-1) at 1–2; Defs' SOMF (DE 129) ¶¶ 11–12). Defendant Jefferey David Jernigan ("Jernigan") attempted to take control of plaintiff and escort him to his newly assigned cell. (Pl. Aff. (DE 134-1) at 2; Defs' SOMF (DE 129) ¶12). Plaintiff requested cleaning supplies for the cell, but defendant Jernigan denied the request. (Pl. Aff. (DE 134-1) at 2).

As defendant Jernigan was attempting to walk and guide plaintiff to his new cell, plaintiff resisted and jerked away, causing defendant Jernigan to lose his grip on plaintiff. (Defs' SOMF (DE 129) ¶13). Defendant Jernigan then threw a closed right fist towards plaintiff's left jaw, which plaintiff dodged. (Id.). Plaintiff then pushed defendant Jernigan's upper arm and slapped his knee. (Id.). Plaintiff then threw himself to the ground. (Id.). After observing plaintiff attack defendant Jernigan, other detention staff, including defendants Sergeant Jerry Matthew Lee ("Lee") and Hinton, came to defendant Jernigan's aid, ultimately getting control of plaintiff and

number specified in the footer of the document supplied by the court's case management / electronic case filing (CM/ECF) system for the docket entry (DE) and not the page number, if any, showing on the face of the underlying document.

3

moving him to his newly assigned cell. (Defs' SOMF (DE 129) ¶14). During the incident, plaintiff felt something hard hit his legs, arms, back, and head, and plaintiff lost consciousness. (Pl. Aff. (DE 134-1) at 2). Plaintiff regained consciousness when being lifted off the ground and was tossed into the newly assigned cell, where he lost consciousness again. (Id.).

Defendant Captain Carson did not witness or participate in the use of force incident on March 10 but later came by plaintiff's cell. (Id.; Carson Decl. (DE 128-4) ¶ 6). Plaintiff requested medical care, but defendant Carson walked away. (Pl. Aff. (DE 134-1) at 2). However, plaintiff did not explain why he needed to visit medical. (Id.). Detention officers, including defendants, did not observe that plaintiff had suffered any injuries. (Defs' SOMF (DE 129) ¶ 19).

## DISCUSSION

A.      Spoliation

As a threshold issue, plaintiff argues defendants destroyed video of the use of force incident. Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001). "The imposition of a sanction (e.g., an adverse inference) for spoliation of evidence is an inherent power of federal courts— though one limited to that action necessary to redress conduct which abuses the judicial process." Hodge v. Wal-Mart Stores, Inc., 360 F.3d 446, 449 (4th Cir. 2004).

However, a sanction for spoliation "cannot be drawn merely from [a party's] negligent loss or destruction of evidence." Id. at 450. "[T]he conduct must be intentional," and "the alleged destroyer must have known that the evidence was relevant to some issue in the anticipated case,

4

and thereafter willfully engaged in conduct resulting in the evidence's loss or destruction." Turner, 736 F.3d at 282.

Here, plaintiff fails to offer support for his conclusory allegation that defendants intentionally destroyed the incident report. Accordingly, the court declines to impose sanctions on defendants for spoliation of evidence.

B.      Motions for Summary Judgment

1.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court "consider[s] each motion separately on its own merits to determine whether [any] of the parties deserves judgment as a matter of law." Defs. of Wildlife v. N.C. Dep't of Transp., 762 F.3d 374, 392 (4th Cir. 2014).[3] The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome

---

[3]      Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

2. Analysis

a. Excessive Force

Defendants argue plaintiff has failed to establish a violation of his constitutional rights. Because plaintiff was a pretrial detainee at the time of the altercation with defendants Jernigan,

Hinton, and Lee, his excessive force claim is governed by the "objective" standard set forth in Kingsley v. Hendrickson, 576 U.S. 389 (2015). The court must determine whether the defendants' use of force was "objectively unreasonable" in light of the particular "facts and circumstances confronting them." Graham v. O'Connor, 490 U.S. 386, 397 (1989); see also Kingsley, 576 U.S. at 396–97. The court reviews the use of force from the perspective of a reasonable officer at the scene, "not with the 20/20 vision of hindsight," and must account for the officer's legitimate need to manage a correctional facility, including by preserving internal order and discipline and maintaining institutional security. Kingsley, 576 U.S. at 397.

Several factors guide the court's evaluation, including: 1) the relationship between the need for a particular use of force and the amount of force used; 2) the extent of the detainee's injury; 3) the officers' efforts, if any, to temper or limit the amount of force; 4) the severity of the security problem presented by the detainee; 5) the threat reasonably perceived by the officer; and 6) whether the detainee was actively resisting the officer. Id.

Here, plaintiff acknowledges he did not follow orders to transfer to his new cell and argued with defendant Jernigan about cleaning the cell. (Pl. Aff. (DE 134-1) at 1–2). Further, after dodging a hit from defendant Jernigan, plaintiff pushed Jernigan's upper arm and slapped his knee. (Id. at 2). After observing plaintiff attack defendant Jernigan, defendants Hinton and Lee came to Jernigan's aid. (Defs' SOMF (DE 129) ¶ 14).

Application of the Kingsley factors to these facts establishes that defendants' use of force was objectively reasonable. A reasonable officer in defendants Jernigan, Lee, and Hinton's position would have determined that use of force was necessary to stop the physical attack and prevent further physical attack by plaintiff. See Kingsley, 576 U.S. at 397; see also Graham, 490

7

U.S. at 396–97 (explaining that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation" and courts must take that circumstance into account when considering whether a constitutional violation occurred).  Furthermore, defendants' physical force was justified in light of plaintiff's admitted refusal to obey commands and the general threat posed by plaintiff.  See Kingsley, 576 U.S. at 397 (identifying relevant factors); see also Brooks v. Johnson, 924 F.3d 104, 113 (4th Cir. 2019) (stating in the context of an Eighth Amendment excessive force claim, "a manifest and immediate need for the protective use of force gives rise to a powerful logical inference that officers in fact used force for just that reason").

Having applied the Kingsley factors to the facts and circumstances of defendants Jernigan, Hinton, and Lee's use of force, the court finds it was objectively reasonable.  Moreover, no evidence of record shows defendant Carson was present during the use of force incident.  (See Carson Aff. (DE 128-4) ¶ 6).  Defendants are therefore entitled to qualified immunity where the undisputed record evidence establishes that they did not use excessive force.

        b.        Deliberate Indifference to Serious Medical Needs

Plaintiff alleges defendant Carson was deliberately indifferent to his serious medical needs where Carson walked away after he requested medical care.  The Fourteenth Amendment's Due Process Clause governs a detainee's claim of deliberate indifference, see Kingsley, 576 U.S. at 400–01; Short v. Hartman, 87 F.4th 593, 611 (4th Cir. 2023).

In this context, a pretrial detainee must show that the challenged government action is not "rationally related to a legitimate nonpunitive governmental purpose" or is "excessive in relation

8

to that purpose." See Short v. Hartman, 87 F.4th 593, 611 (4th Cir. 2023). For claims challenging conditions of confinement, the inmate must establish:

> (1) [that a condition of confinement] posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the [condition existed] and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

Id. Mere negligence is insufficient to establish a claim under this standard. Id. Instead, the plaintiff must show "the defendant acted or failed to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should have been known." Id.; see also Farmer v. Brennan, 511 U.S. 825, 836 (1994).

Plaintiff has not established a triable issue of fact under the foregoing standard. While plaintiff avers he asked defendant Carson to visit medical, he did not explain why he required medical treatment. (Pl. Aff. (DE 134-1) at 2). He merely made the request. (Id.). Further, defendant Carson did not participate or witness the March 10 use of force incident, and no injuries were observed by defendant Carson. (Carson Decl. (DE 128-4) ¶¶ 6, 18). Thus, there is no evidence in the record to show that defendant Carson failed to act in the face of an unjustifiably high risk of harm. See Short, 87 F.4th at 611.

c. Conditions of Confinement

Plaintiff alleges that the new cell in which detention officers were placing him had feces on the walls and floor, and such conditions of confinement violate his right to humane conditions of confinement. (See Pl. Aff. (DE 134-1) at 1). This claim is evaluated under the same Fourteenth Amendment standard set forth above. See Short, 87 F.4th at 611.

Plaintiff fails to offer sufficient evidence showing defendants were aware of or should have been aware of any risk of harm to plaintiff. The defendants all deny knowledge of any particular risk to plaintiff from feces contaminating the cell. (See Jernigan Aff. (DE 128-1) ¶¶ 17–18; Lee Aff. (DE 128-2) ¶¶ 14–15, 10; Carson Aff. (DE 128-4) ¶ 17; Hinton Aff (DE 128-5 ¶¶ 21–22). The same evidence also shows that the risks associated with these conditions were not so obvious that they should have been known. See Short, 87 F.4th at 611; (See Jernigan Aff. (DE 128-1) ¶¶ 17–18; Lee Aff. (DE 128-2) ¶¶ 14–15, 10; Carson Aff. (DE 128-4) ¶ 17; Hinton Aff (DE 128-5) ¶¶ 21–22).

The burden therefore shifts to plaintiff to offer evidence showing a triable issue of fact as to whether defendants' "knew or should have known" that the condition existed and that their action or inaction posed an unjustifiable high risk of harm." Short, 87 F.4th at 611; see Matsushita, 475 U.S. at 586–87.; Celotex, 477 U.S. at 324; Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 521–22 (4th Cir. 2003). Plaintiff has not met this burden. Plaintiff does not specifically explain how defendants personally were aware of any risk of harm to plaintiff. (See Pl's Decl. (DE 134-1)); see Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must [show] that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Accordingly, defendants' motion for summary judgment is granted as to plaintiff's conditions of confinement claim.

d.      Due Process

Defendants argue undisputed evidence shows they did not violate plaintiff's due process rights by placing him in segregation after plaintiff threw his food tray. (Def. Mem. (DE 130) at

10

17–20). Plaintiff did not address defendants' argument in his response. Accordingly, defendants are entitled to summary judgment on plaintiff's due process claims where plaintiff has failed to meet his burden of identifying the portions of the record that establish a genuine dispute of material fact. See Fed. R. Civ. P. 56(c)(1), (3); Bouchat, 346 F.3d at 521–22; see also Alvarez v. Lynch, 828 F.3d 288, 295 (4th Cir. 2016) (providing failure to address arguments in favor of summary judgment is "an outright failure to join in the adversarial process [and] ordinarily results in waiver").

In sum, plaintiff has not established a genuine dispute of fact as to any of his claims, and defendants are entitled to judgment as a matter of law.

## CONCLUSION

Based on the foregoing, defendants' motion for summary judgment (DE 128) is GRANTED. Plaintiff's motion for summary judgment (DE 125) is DENIED. The clerk is DIRECTED to correct defendants' names on the docket as provided in the case caption above and to close this case.

SO ORDERED, this the 27th day of March, 2026.

LOUISE W. FLANAGAN
United States District Judge

11